United States District Court
Southern District of Texas
**ENTERED**
April 30, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER RAMSEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-1719 |
| | § | |
| SAN JACINTO COLLEGE | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the Court[1] is Defendant San Jacinto College District's ("Defendant" or "SJC") First Amended Motion for Summary Judgment (ECF No. 28). Based on a review of the motion, arguments, and relevant law, the Court **GRANTS** Defendant's First Amended Motion for Summary Judgment (*id.*). Plaintiff Jennifer Ramsey's ("Plaintiff") First Amended Complaint (ECF No. 11) is **DISMISSED WITH PREJUDICE**. All other pending motions (ECF Nos. 22, 44) are **DENIED AS MOOT**.

---

[1] The parties consented to proceed before a Magistrate Judge for all proceedings under 28 U.S.C. § 636(c). (ECF No. 41).

## I.    Background[2]

This is a disability discrimination case in which Plaintiff alleges she was discriminated against by her former employer, SJC.  (*See* ECF No. 11).  Plaintiff joined SJC in 2005.  (ECF No. 31-1 at ¶ 1).  Over the course of Plaintiff's employment, she was promoted four times.  (*Id.* at ¶ 2).  By 2013, Plaintiff was promoted to Manager of Learning Technology.  (*Id.*).  "The learning technology manager's [sic] responsible for designing, implementing, developing, and maintaining sustainable learning technology solutions that build workforce capability.  This position oversees the assign modules in an integrated software platform for SJDC employees and actively supports an integrated learning framework, college-wide learning standards, and various instructional design methodologies."  (ECF No. 28-2 at 13:14-22).

Between 2018 and 2021, Plaintiff states she "began to increasingly suffer from symptoms of a severe medical condition, a double-brain herniation, which impacted [her] vision, hearing, balance, and other cognitive functions."  (ECF No. 31-1 at ¶ 4).  Plaintiff took Family and Medical Leave Act ("FMLA") leave from November 2020 through January 4, 2021 for ear and brain surgery.  (ECF

---

[2] "In evaluating a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party."  *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (internal quotations omitted).

No. 28-2 at 40–42).  Plaintiff's doctor allowed her to return to work without restrictions of any kind on January 4, 2021.  (*Id.* at 39–40).

On January 15, 2021, Plaintiff's immediate supervisor issued Plaintiff a letter of expectations that addressed instances where Plaintiff was late to work:

> On Wednesday, January 13 and Friday, January 15, 2021 you arrived to the office well after your stated start time of 8:00 a.m. without communicating with me in advance to inform me that you would be late. This has happened many times over the past several months. I have provided you with feedback regarding the importance of communicating with me prior to the start of your shift when you are going to arrive late to work.

(ECF 28-5 at 2).  Plaintiff disputed the letter of expectations, stating the letter contained "untrue and misleading statements, inaccurate information, and vague improvement expectations."  (ECF No. 31-21 at 1).

On March 3, 2021, Plaintiff asked her immediate supervisor if she could change her work schedule to 9:00 a.m. to 6:00 p.m. to help her show up to work at a consistent time.  (ECF No. 28-14 at ¶ 4; ECF No. 28-16 at 2).  Defendant states this request was approved.  (ECF No. 28 at 4).

On June 3, 2021, Plaintiff's immediate supervisor issued Plaintiff a Corrective Action Notice due to her tardiness that stated:

> On June 3, 2021 you sent an email at 9:30 am informing me you were running behind schedule. I had scheduled a meeting for you and me to meet on the HR Annual Report at 9:30. In your email you acknowledged that you worked from home in the morning and

had mismanaged time to arrive at work on time. You arrived at the office at 10:45 am.

On May 12, 2021 you were scheduled to be in the office and as of 11:46 am you had not arrived. I initiated contact with you inquiring about your status. You had stated that a dishwasher delivery ran late and you requested permission to work remotely that day. In my reply I asked for you to communicate with me timely so I would not need to initiate the connection inquiring about your work status.

Your leave report for May 2021 was not started and timely submitted. I sent a reminder email on June 2nd to complete your leave report. Payroll sent an email on June 3rd informing of the missed deadline to submit your time and a manual process would need to be followed to submit your leave report for May. Other leave reports not started and submitted timely include April 2020, August 2020, and October 2020.

(ECF No. 28-17 at 2–3).

Plaintiff took FMLA leave again from July 27, 2021 to September 7, 2021. (ECF No. 28-2 at 65). Plaintiff's doctor allowed her to return to work without restrictions of any kind on September 7, 2021. (*Id.* at 67–68).

From September 2021 to November 2021, Plaintiff texted her immediate supervisor on ten separate occasions to report late to work. (*See* ECF No. 28-23). During this time, Plaintiff also failed to complete work assignments in a timely manner for her immediate supervisor and Dr. Michelle Cantu Wilson, SJC's Director, Teaching and Learning Initiatives and Special Projects. (ECF No. 28-20 at ¶¶ 6–7, 10). Even after completing late assignments, Plaintiff's work contained errors. (*Id.* at ¶ 10).

On November 4, 2021, Plaintiff's immediate supervisor issued Plaintiff a Final Corrective Action Notice, addressing her tardiness, failure to meet deadlines, and unprofessionalism. (ECF No. 28-24 at 2–3). Plaintiff continued to exhibit performance deficiencies after receiving the Final Corrective Action Notice. (*See* ECF No. 28-20 at ¶ 10).

On December 1, 2021, Plaintiff's immediate supervisor spoke to Vickie Del Bellow, SJC's Vice President Human Resources, about Plaintiff's performance problems. (*Id.* at ¶ 11). Plaintiff's immediate supervisor recommended Plaintiff's employment be terminated as a result of her performance deficiencies. (*Id.*). Dr. Brenda Hellyer ("Dr. Hellyer"), SJC's Chancellor, approved the recommendation. (ECF No. 28-27 at ¶ 3). On December 3, 2021, Plaintiff's immediate supervisor issued a Notice of Termination to Plaintiff. (ECF No. 28-26).

On September 29, 2022, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge alleging disability discrimination and retaliation. (ECF No. 28-13). The EEOC issued a right-to-sue letter on February 9, 2023. (*Id.*). Plaintiff filed her Original Complaint on May 9, 2023 and her First Amended Complaint on June 30, 2023. (ECF Nos. 1, 11). In her First Amended Complaint, Plaintiff asserts five causes of action, three under

the Americans with Disabilities Act (the "ADA") and two under the FMLA. (*See* ECF No. 11).

On October 11, 2024, Defendant filed the instant Amended Motion for Summary Judgment.  (ECF No. 28).

## II.    Legal Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure ("Rule") 56.   Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021).  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis

omitted).  The Court must view the evidence in a light most favorable to the nonmovant.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact.  *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323).  The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof.  *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading.  *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden.  *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).  However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual

controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

## III.  Discussion

Plaintiff asserts five claims in this case: (1) an FMLA interference claim; (2) an FMLA retaliation claim; (3) an ADA failure-to-accommodate claim; (4) an ADA discrimination claim; and (5) an ADA retaliation claim. (ECF No. 11 at ¶¶ 5–6). Defendant moves for summary judgment on all of Plaintiff's claims. (*See* ECF No. 28).

### a.  Plaintiff's FMLA Interference Claim

Defendant argues Plaintiff's FMLA interference claim should be dismissed because (1) Plaintiff cannot show Defendant denied her FMLA benefits to which she was entitled and (2) Plaintiff cannot show any such denial prejudiced her. (*Id.* at 15).

Title 29 U.S.C. § 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided under [the FMLA]." To establish a *prima facie* case of FMLA interference, a plaintiff must demonstrate that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). An employee must also "point to evidence of prejudice in order to recover" on his FMLA interference claim. *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668–69 (E.D. La. 2014); *see also Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) ("To prove an interference claim, a plaintiff 'must at least show that [the defendant] interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation prejudiced [him].'") (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

Here, neither party disputes Plaintiff was an eligible employee, Defendant was subject to the FMLA, Plaintiff was entitled to leave, and that Plaintiff notified Defendant of her intent to take leave. As such, the question becomes whether Defendant interfered with Plaintiff's FMLA rights, and if so, whether Plaintiff was prejudiced by the interference. *See Martin v. Penske Logistics, LLC*, 736 F. Supp. 3d 437, 448 (N.D. Tex. 2024).

As to interference, "an employee must show that he was denied his entitlements under the FMLA, or, that an employer did not respect the employee's FMLA entitlements." *Bell v. Dall. Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011). Defendant points to evidence where Plaintiff testified that she requested FMLA leave, which was granted, and that she took all the FMLA leave that she needed. (ECF No. 28 at 14–15; ECF No. 28-2 at 34–42, 69–71 ("Q. So it is correct that . . . the period of time you were out continuously, that was approved by FMLA, correct? A. Yes. Q. And then you also had approved intermittent FMLA when you needed appointments and things like that[?] . . . A. Correct.")).

Having met its initial burden to demonstrate there is an absence of evidence to support Plaintiff's case, Plaintiff must now show summary judgment is not proper. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). "The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim." *Kourouma v. Credence Res. Mgmt., LLC*, No. 3:22-cv-323, 2023 WL 3311106, at *2 (N.D. Tex. Mar. 30, 2023), *report and recommendation adopted*, No. 3:22-cv-323, 2023 WL 3313527 (N.D. Tex. May 6, 2023). However, Plaintiff simply responds to Defendant's argument by stating Defendant "interfered with, restrained, or

10

denied [Plaintiff] FMLA leave" without identifying any evidence to support such a claim. (ECF No. 31 at 36). Thus, Plaintiff has failed to raise a genuine dispute of material fact with respect to her FMLA interference claim.[3] *See Esquivel v. McCarthy*, No. 3:15-cv-1326, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) ("If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted."). Accordingly, Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

   b. Plaintiff's FMLA Retaliation Claim

Defendant argues Plaintiff's FMLA retaliation claim should be dismissed because she cannot show a causal link between her FMLA leave and her termination. (ECF No. 28 at 16).

Summary judgment for a retaliation claim under the FMLA is subject to the *McDonnell Douglas* test.[4] *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835

---

[3] Because Plaintiff fails to raise a genuine dispute of material fact with respect to whether Defendant interfered with Plaintiff's FMLA rights, the Court need not reach the question of whether Plaintiff was prejudiced by such interference.

[4] The traditional *McDonnell Douglas* framework does not always apply in FMLA retaliatory discharge cases. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Instead, "[t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." *Id.* However, Plaintiff does not assert that the mixed-motive framework applies in this case. *See Amedee*, 953 F.3d at 835 n.4.

(5th Cir. 2020); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case for FMLA retaliation, a plaintiff must show (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If this showing is made, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the employment decision. *See Richardson*, 434 F.3d at 332. If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination. *Id.*

As to Plaintiff's FMLA leave in late 2020, Defendant contends the ten months between Plaintiff's FMLA leave and her termination is too attenuated to establish causation. (ECF No. 28 at 16). When evaluating causation, a court "shall consider the 'temporal proximity' between the FMLA leave[ ] and the termination." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006). The Fifth Circuit concluded that "a month is close enough in time to create a causal connection." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021). The Fifth Circuit has also indicated that causation may be satisfied if the time between an employee's FMLA leave and

termination is within one to two-and-a-half months. *See Teal v. Georgia-Pac. Wood Prods. LLC*, No. 9:23-cv-079, 2024 WL 4850803, at *10 (E.D. Tex. Nov. 20, 2024) (citing *Campos*, 10 F.4th at 528). However, larger gaps in time, such as four months or more, are considered "insufficient evidence to establish the causal link required to make a *prima facie* case of FMLA retaliation." *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 921–22 n.30 (5th Cir. 2015) (collecting cases).

In her response, Plaintiff points to evidence showing Defendant made the decision to terminate Plaintiff on December 1, 2021, less than two months after her FMLA leave request had been revised and less than three months after she had been approved for FMLA leave retroactively. (ECF No. 31 at 35; *see* ECF Nos. 31-31–31-32, 31-34; *see also* ECF No. 31-42). As such, Plaintiff argues she met the causal link element, establishing a *prima facie* case of retaliatory discharge, based on temporal proximity alone. (ECF No. 31 at 36). The Court agrees with Plaintiff that this temporal proximity is enough to show a causal link. *Cantu v. Vitol, Inc.*, No. 09-cv-0576, 2011 WL 486289, at *10 (S.D. Tex. Feb. 7, 2011) (collecting cases).

However, Defendant also argues Plaintiff was terminated for legitimate, non-retaliatory reasons. (ECF No. 28 at 16). Defendant cites to testimony from Plaintiff's immediate supervisor who recommended Plaintiff's termination.

(*Id.*; *see also* ECF No. 28-20).  Plaintiff's immediate supervisor testified he did not consider Plaintiff's FMLA leave when he recommended Plaintiff's termination.  (ECF No. 28-20 at ¶ 12 ("I recommended [Plaintiff]'s termination because of the numerous performance deficiencies . . . . I did not consider any time [Plaintiff] was away from work due to doctor's appointments, or personal health issues, whether or not those absences were covered by FMLA, when making my recommendation to terminate her employment.")).  Defendant also cites to testimony from Dr. Hellyer who approved the recommendation to terminate Plaintiff's employment.  (ECF No. 28 at 16; *see also* ECF No. 28-27).  Dr. Hellyer testified she approved Plaintiff's termination solely due to the performance deficiencies identified in the recommendation she received on December 1, 2021.  (ECF No. 28-27 at ¶ 4).  Because "[j]ob performance is a legitimate, non-retaliatory reason for termination," the burden shifts back to Plaintiff to demonstrate Defendant's legitimate reason is actually a pretext for retaliation.  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

While Plaintiff states in her response that she has brought forth evidence showing her request for FMLA leave was a factor motivating her termination, Plaintiff points the Court to no such evidence.  (ECF No. 31 at 36).  Plaintiff states that each time she "went out on FMLA leave, or sought FMLA leave,

14

she was retaliated against and written up." (*Id.* at 35).  For support, Plaintiff cites generally to sections C through K of her factual background section, which encompasses nine pages and refers to numerous exhibits.  (*Id.*).  However, "[t]he party opposing summary judgment is required to identify *specific* evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (emphasis added); *see United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record." (quoting *Albrechsten v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002))); *see also In re Senior Care Centers, LLC*, No. 3:21-cv-01357, 2023 WL 6519756, at *17 (Bankr. N.D. Tex. Mar. 24, 2023), *report and recommendation adopted sub nom. Halperin as Tr. for Senior Care Centers, LLC v. Neuman Found., Inc.*, No. 3:21-cv-1357, 2023 WL 6534207 (N.D. Tex. May 8, 2023) ("While the Trustee does make reference to summary judgment evidence in the "Factual Background" section of his Opposition, he does nothing to tie the record references to his assertion that SCC did not receive reasonably equivalent value in exchange for the Transfer—an essential element of his constructive fraud claims.").

Further, "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire*, 480 F.3d at

391.    Therefore, Plaintiff fails to create a genuine issue of material fact regarding whether Defendant's decision to terminate her was a pretext for retaliation.    Accordingly, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

           c.  <u>Plaintiff's ADA Claims</u>

Defendant also argues Plaintiff's ADA failure-to-accommodate, discrimination, and retaliation claims should be dismissed.  (ECF No. 28 at 16).

                      *i.  Statute of Limitations*

Defendant first argues all of Plaintiff's ADA claims that accrued prior to the date of her termination are time-barred, including her failure-to-accommodate claim.  (*Id.* at 17).  Plaintiff did not respond to Defendant's argument.

Under the ADA, before filing a civil action, a plaintiff "must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days after the alleged violations occurred."  *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390 (5th Cir. 2005).  Here, Plaintiff filed her EEOC charge on September 29, 2022.  (ECF No. 28-13).  Accordingly, any acts of discrimination that occurred prior to December 3, 2021 are time-barred.  *See Windhauser v. Bd. of Supervisors for La. State Univ. &*

*Agr. & Mech. Coll.*, 360 F. App'x 562, 566 (5th Cir. 2010) ("[Plaintiff] filed a charge of discrimination on January 8, 2002.  Accordingly any acts of discrimination which occurred prior to March 14, 2001 are time-barred."); *Henson*, 128 F. App'x at 391 (finding the district court properly "did not consider [plaintiff]'s claims that occurred before March 29, 2000, which is 300 days prior to January 22, 2001, the date on which [plaintiff] filed a charge of discrimination with the EEOC").

As such, Plaintiff's EEOC charge was timely with respect to her allegation that she was unlawfully terminated on December 3, 2021 because Plaintiff filed her EEOC charge on September 29, 2022, within 300 days of the allegedly discriminatory event.[5]  (ECF Nos. 28-13, 28-26); *see also Grooms v. Walden Sec.*, No. 3:21-cv-0363, 2022 WL 949842, at *6–7 (M.D. Tenn. Mar. 29, 2022) (noting a discrimination charge filed on the 300th day after an employee's termination was within the 300-day filing period).

However, Plaintiff has failed to show her EEOC charge was timely with respect to Defendant's alleged failure to reasonably accommodate—based on its alleged denial of her accommodation requests that occurred in

---

[5] Defendant argues all of Plaintiff's ADA claims are time-barred because Plaintiff filed her EEOC charge on the 300th day following her termination.  (*See* ECF No. 28 at 17).  However, Defendant provides no authority for its contention that filing an EEOC charge on the 300th day constitutes an untimely filed EEOC charge.  *See* FED. R. CIV. P. 6(a)(4)(B) (explaining that, if a statute does not specify a method of computing time and the period is stated in days, the last day of the period is included).

approximately 2021.  (ECF No. 31-38 at 42, 44); *see Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 673 (N.D. Tex. 2023), *reconsideration denied*, 347 F.R.D. 155 (N.D. Tex. 2024) (finding a failure-to-accommodate claim was time-barred because the denial of the request occurred "well before the 300-day window" of the EEOC charge); *Windhauser*, 360 F. App'x at 566 (recognizing the 300-day limitations period for a failure-to-accommodate claim began to run from the date an accommodation request was denied).  In her deposition testimony, Plaintiff states she could not recall the specific dates of when she allegedly submitted accommodation requests.  (ECF No. 31-38 at 42, 44).  However, based on Plaintiff's testimony, it appears that these requests must have been made prior to December 3, 2021, the date of Plaintiff's termination.  As discussed above, any acts of discrimination that occurred prior to December 3, 2021 are time-barred.  Thus, the Court agrees with Defendant that Plaintiff's failure-to-accommodate claim is time-barred and must be dismissed.  *Id.*

### ii.  Plaintiff's ADA Discrimination Claim

Defendant also argues Plaintiff's ADA discrimination claim should be dismissed because (1) Plaintiff was not disabled and (2) Plaintiff was not qualified for her job as Learning Technology Manager.  (ECF No. 28 at 19).

To establish a claim of disability discrimination, a plaintiff can either present "direct evidence of discrimination" or use the indirect method of proof in *McDonnell Douglas*. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Under *McDonnell Douglas*, a plaintiff must first make out a *prima facie* case of discrimination by showing that (1) she suffers from a disability; (2) she is qualified for the job; (3) she was subject to an adverse employment action; and (4) she was treated less favorably than non-disabled employees. *See id.*

As to the first element, the ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Equal Emp. Opportunity Comm'n v. Steel Painters LLC*, 433 F. Supp. 3d 989, 1001 (E.D. Tex. 2020).

Defendant points to Plaintiff's deposition where she testifies to previously using a hearing aid, but states she no longer needed it as of November 2020. (*See* ECF No. 28-2 at 9). As such, Defendant argues Plaintiff cannot offer any evidence that she suffered from a physical impairment that substantially limited one or more of her major life activities. (ECF No. 28 at 18). In response, Plaintiff argues that "[b]etween 2018 and 2021, [Plaintiff]

began increasingly suffering from a severe medical condition, which impacted her vision, hearing, balance, and other cognitive functions." (ECF No. 31 at 25). For support, Plaintiff relies solely on her declaration, which details her medical conditions and various brain surgeries. (*See* ECF No. 31-1).

"In the light of the relatively low bar created by the substantially-limits and summary-judgment standards," the Court finds that Plaintiff's declaration creates a genuine dispute of material fact for whether her impairments are substantially limiting and, thus, has a disability. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018) (finding a district court's ruling that a declaration was insufficient summary judgment evidence to raise a material fact issue as to a substantial limitation without corroborating medical evidence was erroneous).

As to the second element, the ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To avoid summary judgment on the qualified-individual issue, Plaintiff must show either (1) that "[s]he could perform the essential functions of h[er] job in spite of h[er] disability" or (2) "that a reasonable accommodation of h[er] disability would have enabled h[er] to

20

perform the essential functions of the job." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 324 (5th Cir. 2021) (internal quotations omitted).

Defendant contends Plaintiff was not qualified for her job as Learning Technology Manager because she could not report to work on time, and timely attendance and supervision were essential functions of her job. (ECF No. 28 at 19). For support, Defendant points to the declaration of one of Plaintiff's immediate supervisors who provided context on why it was essential for Plaintiff's position that she timely report to work in accordance with her scheduled work hours. (ECF No. 28-20 at ¶ 3). In response, Plaintiff argues she was employed by Defendant for sixteen years and consistently received positive reviews. (ECF No. 31 at 26). Plaintiff cites to Plaintiff's Exhibits 2 through 15 for support. (*Id.*). Exhibit 2 is not attached to Plaintiff's Response. Exhibits 3 through 15 are Plaintiff's performance reviews ranging from 2008 to 2021. (ECF Nos. 31-2–31-14). Plaintiff argues these performance reviews confirm she was qualified to handle her position. (ECF No. 31 at 26). The Court agrees Plaintiff's performance reviews are sufficient to raise a fact issue. *See Bibbus v. SkyWest Airlines, Inc.*, No. 4:21-cv-3324, 2024 WL 2159956, at *5 (S.D. Tex. May 14, 2024) (finding favorable performance reviews were sufficient to raise a fact issue as to whether Plaintiff was qualified).

21

As to the third element, it appears undisputed that Plaintiff "suffered an adverse employment action—namely, termination." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 700 (5th Cir. 2014) (citing 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . .")).

As to the fourth element, Plaintiff does not address whether she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. Thus, the Court finds Plaintiff fails to establish a *prima facie* case of discrimination under the ADA. However, for the sake of completeness, the Court will consider the remaining steps in the *McDonnell Douglas* framework. *See Long v. City of Llano*, No. 22-cv-1273, 2024 WL 3189264, at *4 (W.D. Tex. June 26, 2024), *report and recommendation adopted,* No. 22-cv-01273, 2024 WL 3432549 (W.D. Tex. July 15, 2024), *aff'd,* No. 24-50663, 2025 WL 655800 (5th Cir. Feb. 28, 2025).

"Once the plaintiff has stated a prima facie case, the defendant must 'articulate some legitimate nondiscriminatory reason' for its action that adversely affected the employee." *Daigle*, 70 F.3d at 396 (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Defendant argues it is entitled to summary judgment because Plaintiff was terminated for her

performance deficiencies.     (ECF No. 28 at 19).     "Job performance is a legitimate, non-retaliatory reason for termination." *LeMaire*, 480 F.3d at 391 (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)).

The burden, therefore, shifts back to Plaintiff to demonstrate Defendant's legitimate reason is actually a pretext for discrimination.  At the summary judgment stage, this means "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  "In conducting a pretext analysis, the court does not 'engage in second-guessing of an employer's business decisions.'" *Roberson-King v. La. Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018) (quoting *LeMaire*, 480 F.3d at 391).  In addition, an employee's subjective belief that she has suffered discrimination is not sufficient to establish pretext.  *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (noting a "subjective belief of discrimination . . . cannot be the basis of judicial relief").

Plaintiff contends there is evidence of pretext, arguing Defendant's leadership had "substantial knowledge of [Plaintiff]'s medical condition, her requests for medical leave, and her requests for accommodations."  (ECF No. 31 at 30).  Plaintiff does not argue Defendant's provided reason (performance deficiencies) is false.  Instead, Plaintiff focuses on establishing one of Plaintiff's

23

immediate supervisors and Dr. Hellyer had knowledge of Plaintiff's disability and requests for accommodations. (*Id.*). However, even if the Court agreed with Plaintiff that Defendant had knowledge of Plaintiff's disability, Plaintiff has not provided a reason for the Court to conclude "that the employer's reasons were not the true reason for the employment decision *and* that unlawful discrimination was." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (emphasis in original); *see also Long*, 2024 WL 3189264, at *5; *Way*, 133 F.4th at 526 (finding a reasonable factfinder could "infer the ultimate fact of retaliation" from the apparent falsity of the employer's explanation where evidence showed inconsistencies in the employer's explanation).

Plaintiff does state "[i]t was not until after [Plaintiff]'s medical conditions arose that her supervisors started to write her up for frivolous things." (ECF No. 31 at 31). Plaintiff relies on *Burton v. Freescale Semiconductor, Inc.* where the Fifth Circuit noted that "[e]vidence of a sudden and unprecedented campaign to document [an employee's] deficiencies and thus justify a decision that had already been made, however, could raise an inference of pretext." 798 F.3d 222, 236 (5th Cir. 2015). However, *Burton* contained direct evidence that, after deciding to fire an employee, the employer acted to create an "exculpatory paper trail." *Id.* at 237 ("Here, (1) the

[employer's] e-mails show direct solicitation of belated 'documentation' from [employee]'s supervisors, (2) there is evidence that [employer] had previously been lackadaisical about recording and reporting [employee]'s alleged deficiencies, and (3) the negative reports generated by the [employer was] incorporated into a misleading 'communication plan' regarding [employee]'s release."). Here, Plaintiff does not point to evidence that Defendant generated retroactive reports on Plaintiff's alleged deficiencies *after* Defendant decided to terminate Plaintiff. In fact, Plaintiff appears to acknowledge her "tardiness issues," which formed part of the basis for her termination. (ECF No. 28 at 31; *see also* ECF No. 28-29 at 2–3). Thus, the Court finds *Burton* to be distinguishable from the instant case.

Plaintiff also argues "even if Dr. Hellyer was not the final decision-maker, if she was motivated by [Plaintiff's immediate supervisor]'s bias to cause [Plaintiff]'s termination and Dr. Hellyer's actions were a motivating factor in the termination, then [Defendant] is liable for discrimination" under the "cat's paw" theory. (ECF No. 31 at 32–33). Further, Plaintiff adds that "[Plaintiff's immediate supervisor], the decision-maker, was aware of [Plaintiff]'s disability" and that this knowledge was "enough for him to have a discriminatory animus against [Plaintiff] and then pollute Dr. Hellyer." (*Id.* at 33).

Under the "cat's paw" method, "[a] plaintiff may show pretext by demonstrating that a person who was the de facto decision maker exhibited discriminatory animus, even if the purported decision maker did not." *Sabatelli v. Baylor Scott & White Health*, No. 1:16-cv-596, 2017 WL 9325617, at *3 (W.D. Tex. Oct. 4, 2017), *aff'd*, 832 F. App'x 843 (5th Cir. 2020). "The cat's paw theory recognizes that the discriminatory animus of a manager can be imputed to the ultimate decision maker if the decision maker acted as a rubber stamp, or the cat's paw, for the subordinate employee's prejudice." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 914 (S.D. Tex. 2007) (internal quotations omitted). "To invoke the cat's paw analysis, [a plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quotation omitted).

As an initial matter, Plaintiff provides no legal support for her argument that knowledge of a disability is enough to establish discriminatory animus. *See also Way*, 133 F.4th at 527 (finding a jury could find the supervisor's actions were motivated by retaliatory animus where the supervisor both knew the employee sought medical treatment for anxiety and engaged in a pattern of harassment and bullying towards the same employee).

26

Further, Plaintiff fails to address how her immediate supervisor possessed leverage or exerted influence over Dr. Hellyer. *Id.* (noting the employer's termination letter stated it made its decision due to a supervisor's report). "The degree of leverage that the 'cat's paw' must exercise is high." *Sabatelli*, 2017 WL 9325617, at *3. Because Plaintiff puts forth no evidence to suggest her immediate supervisor exercised any leverage over Dr. Hellyer in the decision to terminate Plaintiff, this route of establishing pretext also fails. *Long*, 2024 WL 3189264, at *6 (finding a high degree of leverage was not shown because the supervisor's position inherently required the supervisor to share his opinions on certain matters with a higher-up).

As such, Plaintiff has failed to create a genuine issue of material fact regarding whether Defendant's legitimate reason is a pretext for discrimination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA discrimination claim.

### iii. *Plaintiff's ADA Retaliation Claim*

Lastly, Defendant argues Plaintiff's ADA retaliation claim should be dismissed because Plaintiff did not engage in an activity protected by the ADA. (ECF No. 28 at 20). Plaintiff did not respond to Defendant's argument.

"The failure to brief or argue an issue in response to a motion for summary judgment waives that argument in subsequent proceedings."

27

*Padgett v. Fieldwood Energy, LLC*, No. 6:18-cv-632, 2020 WL 524868, at *5 (W.D. La. Jan. 31, 2020) (citing *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018)).  "The Fifth Circuit makes it clear that when a party does not address any issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court."  *JMCB, LLC v. Board of Comm. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La 2018).   Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA retaliation claim.  *See Venezia v. ConocoPhillips Co.*, No. 12-cv-2168, 2014 WL 107962, at *13 (E.D. La. Jan. 9, 2014) ("Failure to address a claim in response to a defendant's summary judgment motion constitutes abandonment of the claim.") (citing *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001)).

## IV.   Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's First Amended Motion for Summary Judgment (*id.*).  Plaintiff's First Amended Complaint (ECF No. 11) is **DISMISSED WITH PREJUDICE**.  All other pending motions (ECF No. 22, 44) are **DENIED AS MOOT**.

**SIGNED** in Houston, Texas on April 30, 2025.

Richard W. Bennett
United States Magistrate Judge

28